FILED

12/03/2018

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
September 18, 2018 Session

## STATE OF TENNESSEE v. DARRELL GRANT FISHER

**Appeal from the Criminal Court for Davidson County**
**No. 2016-B-566       Steve R. Dozier, Judge**

_____

### No. M2017-01966-CCA-R3-CD

_____

The defendant, Darrell Grant Fisher, entered an open plea to four counts of sexual battery by an authority figure. The trial court sentenced the defendant to five years on two counts and four years on the remaining two counts with all sentences to be served consecutively for an effective sentence of eighteen years. On appeal, the defendant claims the trial court erred in imposing consecutive terms. After a thorough review of the record and the applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J. and TIMOTHY L. EASTER, J., joined.

Michael J. Flanagan, Nashville, Tennessee, for the appellant, Darrell Grant Fisher.

Herbert H. Slatery III, Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Tammy Meade, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural History

The defendant was charged with eight counts of aggravated sexual battery, two counts of statutory rape by an authority figure, six counts of sexual battery by an authority figure, two counts of a bribing a witness, and one count of violating the Child Protection Act. The State and the defendant agreed the defendant would plead guilty to

four counts for sexual battery by an authority figure with sentencing to be determined by the trial court. A sentencing hearing was held on August 23, 2017.

During the sentencing hearing, the State introduced into evidence the presentence report as well as the testimony of three of the defendant's victims.[1] E.Y. testified he was twelve years old when he first met the defendant through the "historical cadet core and boy scouts." According to E.Y., the defendant was a father figure to him and allowed E.Y. to live with him while the E.Y.'s family was going through some difficult times. The defendant provided E.Y. a place to live, food, clothing, discipline, and made sure E.Y. stayed on top of his school work. The defendant even offered to teach E.Y. how to wrestle.

At some point during their relationship, the defendant began discussing masturbation with E.Y. E.Y. had a speech impediment, and the defendant told him masturbation would help him with his speech issue and make him a better wrestler. The defendant instructed E.Y. to go into the bathroom, masturbate, and ejaculate into the sink. As soon as E.Y. complied, the defendant told him "you talk so much better." The defendant also began discussing with E.Y. "the benefits of having control of your masturbation and how it makes you a better athlete and stuff like that." It was during this discussion the defendant first mentioned the use of chastity devices to E.Y. and how the defendant had worn one for a year and it had changed his life.

That same day, as E.Y. and the defendant were sitting on the couch and watching television, the defendant, who was lying on his back, directed E.Y. to lie on top of him and to touch himself. As E.Y. did, the defendant touched E.Y.'s penis over his clothing and instructed E.Y. to masturbate to completion. E.Y. complied.

Several days later, the defendant showed E.Y. a chastity device and directed him to put it on. When E.Y. complained that it hurt, the defendant removed the device, told E.Y. he needed to masturbate, and then, for the first time, the defendant "masturbated [E.Y.] until completion." In addition to using the chastity device on the victim, the defendant, on subsequent occasions, inserted a sex toy in E.Y.'s anus. When E.Y. said it hurt and removed it, the defendant stated, "you should do that to me as a punishment whenever you strap me down." According to E.Y., the defendant had straps on his bed and would make the victim strap him down and masturbate him or punish him until completion. The defendant also wore a chastity device that would shock his genitals if

---

[1] It is the policy of this Court to protect the identity of the victims especially when the crimes involve a minor and are sexual in nature. Therefore, we will refer to the victims by their initials. No disrespect is intended.

someone pushed the remote control to the device. The defendant would wear the device in public, assumingly under his clothing, and have his victims shock him if he "acted up."

While the defendant never performed oral sex on E.Y. and never requested the same, he did have E.Y. penetrate him anally on one occasion but E.Y. "stopped before completion." The defendant also attempted to anally penetrate E.Y. with his penis "probably about five times."

According to E.Y., these incidents were the beginning of three to four years of sexual abuse that started when he was twelve and ended when he was sixteen years old. In addition to these specific events, E.Y. testified that over the next several years, the defendant would have E.Y. place the defendant in the chastity device, masturbate the defendant to completion, spank the defendant, and watch pornographic movies with the defendant. E.Y. estimated the defendant touched his penis "hundreds" of times, and E.Y. was made to touch the defendant's penis "more than a hundred" times during the three to four years the defendant abused him. The defendant used the chastity device on E.Y. "over 10 times" and had E.Y. use it on the defendant "hundreds of times; many, many, many times." In addition to the abuse E.Y. suffered at the hands of the defendant, he also witnessed the defendant abuse at least one other victim.

C.W. testified that he too met the defendant through a World War II reenactment group when he was fifteen or sixteen years old. C.W. considered the defendant to be a father figure and someone he could go to when he was upset or feeling down. When asked if the defendant ever did anything that made him feel uncomfortable or that he thought was inappropriate, C.W. stated the defendant would make him wear a wrestling singlet and make C.W. sit on his lap. Additionally, on a trip to Fort Oglethorpe, Georgia, C.W. had an argument with another "cadet" and ended up staying in a hotel room with the defendant. When the defendant noticed C.W. was upset, the defendant told him to go into the bathroom and masturbate. While C.W. did enter the bathroom, he did not follow the defendant's instructions because "I didn't feel comfortable with that." C.W. also declined the defendant's request that they sleep in the bed together.

K.W. met the defendant when he was thirteen years old as part of a World War II reenactment group. K.W. looked up to and respected the defendant. When questioned as to whether the defendant ever made him feel uncomfortable, K.W. testified that, when they would hang out in the defendant's basement, the defendant would make "me sit on his lap right in his crotch area and I could feel his penis. . . ." If K.W. tried to get up, the defendant would try to restrain him. K.W. testified he witnessed the defendant do the same thing to E.Y. as well. The defendant also asked K.W. to masturbate into the bathroom sink on at least three occasions.

After calling the three victims, the State concluded its proof. The defendant then called Kimber Baldinger, the mother of three young boys who also participated in the same World War II reenactment group as the defendant. Ms. Baldinger testified she used to work for the general sessions court clerk's office and then for District Attorney Richard Fisher for three years. While Ms. Baldinger did not condone the defendant's behavior, she stated she was there to support him. She noted that regardless of what the defendant admitted to, "it does not change the good that he's done in so many other lives." Ms. Baldinger testified the defendant was a guiding and steady influence in the lives of her sons, especially her middle son. On cross-examination, Ms. Baldinger admitted she might feel differently if the defendant had abused her children.

At the conclusion of the hearing, the trial court took the matter under advisement. On August 31, 2017, the trial court entered a written sentencing order. In sentencing the defendant, the trial court considered the evidence presented during the sentencing hearing including, the presentence report, and the arguments of counsel. The trial court also considered the "statistical information provided by the Administrative Office of the Courts." In reviewing the appropriate and applicable enhancement factors, the trial court found enhancement factor (1), the defendant has a pervious history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range, applied to the defendant. Tenn. Code Ann. § 40-35-114(1). The trial court also applied mitigating factor (1), the defendant's criminal conduct neither caused nor threatened serious bodily injury. Tenn. Code Ann. § 40-35-113(1). Finally, upon considering "the sentencing principles and all the factors in this case," the trial court imposed a sentence of five years each on two counts and four years on each of the remaining counts. Additionally, the trial court, relying on Tennessee Code Annotated section 40-35-115(b)(5), the defendant was convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and the victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims, found consecutive sentences appropriate and imposed an effective sentence of eighteen years' confinement. This timely appeal followed.

*Analysis*

On appeal, the defendant contends the trial court abused its discretion in imposing consecutive terms. Specifically, the defendant argues the trial court, while mentioning some of the factors in the statute, based its decision solely "upon the diabolical nature involving the sexual abuse of young adolescent boys." The State argues the trial court considered all the relevant factors and imposed a sentence consistent with the purposes and principles of the Sentencing Act. We agree with the State.

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; and (7) any statement the defendant made in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b)(1)-(7) (2017); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. Tenn. Code Ann. § 40-35-103 (2017).

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2017); *State v. Bise*, 380 S.W.3d 682, 706 (Tenn. 2012). However, "[m]ere inadequacy in the articulation of the reasons for imposing a particular sentence . . . should not negate the presumption [of reasonableness]." *Bise*, 380 S.W.3d at 705-06. The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2017), Sentencing Comm'n Cmts.

When reviewing a trial court's imposition of consecutive sentences, "the presumption of reasonableness applies," which gives "deference to the trial court's exercise of its discretionary authority to impose consecutive sentences if it has provided reasons on the record establishing at least one of the seven grounds listed in Tennessee Code Annotated section 40-35-115(b)." *State v. Pollard*, 432 S.W.3d 851, 861 (Tenn. 2013). "Any one of [the] grounds [listed in section 40-35-115(b)] is a sufficient basis for the imposition of consecutive sentences." *Id*. at 862 (citing *State v. Dickson*, 413 S.W.3d 735 (Tenn. 2013)).

Here, the trial court concluded consecutive sentences were warranted under subsection (5) of section 40-35-115(b). In support of this conclusion, the trial court found,

[T]he extent of the [d]efendant's sexual abuse is horrific. At the sentencing hearing, E.Y. testified the defendant touched his penis hundreds of times and he touched the defendant's penis hundreds of times. Further, the defendant used sex toys with E.Y. for his sexual gratification. These

- 5 -

incidents occurred over the course of a three (3) year period. Therefore, based upon the diabolical nature involving the sexual abuse of young adolescent boys, the [c]ourt finds it is necessary to run the counts consecutive for an effective sentence of eighteen (18) years.

Contrary to the defendant's claim on appeal, "Not all of the aggravating circumstances listed in subsection (5) need to be present to justify consecutive sentencing, and consecutive sentencing may still be appropriate under subsection (5) 'even when one factor militates against [it] if the other aggravating circumstances have been established and carry sufficient weight.'" *State v. James Allen Perry*, No. E2015-01227-CCA-R3-CD, 2016 WL 2901817 (Tenn. Crim. App. May 13, 2006), *no perm. app. filed* (citing *State v. Doane*, 393 S.W.3d 721, 739 (Tenn. Crim. App. 2011)). A review of the trial court's ruling, including the statement about which the defendant complains, reveals the trial court did, in fact, properly consider and apply subsection (5).

Per its written order, the trial court found the defendant was convicted of two or more offenses involving sexual abuse of a minor. These events arose out of a relationship in which each of the victims viewed the defendant as a father figure. For each victim, the abuse lasted at least three years. And finally, while the extent of the abuse was different for each victim, the trial court noted the "extent of the [d]efendant's abuse is horrific." In support of that finding, the trial court noted the defendant touched one victim "hundreds of times," forced the victim to touch him "hundreds of times," and used sex toys on the victim. The trial court's findings are fully supported by the record. Thus, the trial court did not abuse its discretion by imposing consecutive terms. The judgments of the trial court are affirmed.

_____
J. ROSS DYER, JUDGE